

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 27, 2021

**BY ECF**
The Honorable Loretta A. Preska
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Michael Latimer*, 20 Cr. 202 (LAP)

Dear Judge Preska:

      The Government respectfully submits this letter in advance of the sentencing of Michael Latimer (the "defendant") scheduled for October 4, 2021.  As set forth in the parties' plea agreement and the Revised Final Presentence Investigation Report, dated September 20, 2021 ("PSR"), the Guidelines call for the mandatory minimum sentence of 84 months' imprisonment required by the statute of conviction.  The Probation Office recommends a sentence of 84 months' imprisonment, and for the reasons set forth below, the Government agrees that such a sentence would be fair and appropriate.

      I.    **Offense Conduct**

      The defendant, Michael Latimer, is a thirty year-old male who, while employed as a police officer with the New York City Police Department ("NYPD"), committed an armed robbery of marijuana dealer.  (PSR ¶¶ 12-20).

      Latimer and his three co-defendants committed this armed robbery on February 6, 2020 inside of an apartment building (the "Building") in the Bronx, New York.  (PSR ¶ 13).  The victim, a marijuana dealer with a prior relationship with Latimer's co-defendant Justin Rivers (the "Victim"), agreed to sell Rivers 20 pounds of marijuana, and Latimer and his co-defendants decided to rob him.  (*Id.*).  The plan for the robbery involved Latimer exploiting his role as an NYPD officer to trick the Victim into thinking that he was being arrested and having his marijuana confiscated, when in fact he was being robbed at gunpoint by an off-duty police officer and his co-conspirators.  (*Id.* at 13-16).

      On the day of the robbery, Latimer and his co-defendants met up prior to the robbery and then drove to the Building.  (*Id.* at 14).  Latimer and co-defendant Jamel Jones exited the car and entered the Building, while co-defendant Rivers and Lynch waited outside the Building.  (*Id.*)  Latimer was wearing his NYPD uniform pants, a bulletproof vest, a ski mask and had his NYPD shield around his neck.  Latimer was also carrying his NYPD service weapon, which was loaded

Case 1:20-cr-00202-LAP   Document 101   Filed 09/27/21   Page 2 of 4

Page 2

with fifteen rounds of ammunition.  (*Id.*)  Jones, who was also armed with a loaded gun, was also dressed in dark clothing for the purpose of giving the impression that he was a law enforcement officer.  (*Id.*)

As the Victim walked into the lobby of the Building to meet Rivers to sell him the marijuana, the Victim had a bag with 10 pounds of marijuana on his shoulder.  (*Id.* at 15).  Latimer shined a flashlight in the Victim's face, pulled out his NYPD shield and asked to see the Victim's identification.  (*Id.* at 16).  Latimer also asked about the contents of the Victim's bag.  (*Id.*)  The Victim, who believed that Latimer was an NYPD officer, told Latimer that his identification was upstairs and led Latimer and Jones to his apartment on the floor above.  (*Id.*)

While Latimer, Jones and the Victim stood outside the Apartment, Latimer suggested to the Victim that he would be taken to jail if he did not hand over the bag of marijuana.  (*Id.* at 16).  In particular, Latimer said something to the effect of, "My sergeant would be very happy with this," referring to the marijuana, and then continued, "Do you want to go to jail for it, or just take a loss and get it confiscated?"  (*Id.*)  During that conversation, Latimer put his hand on his firearm, which was in a holster on his hip, and lifted his sweater so that the firearm was clearly visible to the Victim.  (*Id.*)  During this exchange outside the apartment, Jones also took the Victim's apartment keys from the Victim and used the keys to enter the apartment.  (*Id.*)  Jones took a wallet and a watch from the apartment.  (*Id.*)  Jones and Latimer ultimately returned the wallet to the Victim, but not before removing his forms of identification.  (*Id.*)  Finally, Latimer told the Victim to go inside the apartment and lock the door, which the Victim did.  Latimer and Jones then fled with the bag of marijuana, the Victim's watch, and the Victim's forms of identification.  (*Id.*)

Latimer and Jones then left with the Victim's marijuana and met their co-conspirators outside the Building.  After driving away with co-defendant Keith Lynch and dropping him off nearby, Latimer and Jones were stopped by law enforcement.  (*Id.* at 19).  When the vehicle was pulled over, Latimer told the officers that he was "on the job."  (*Id.*)  At this time, Latimer was still wearing his NYPD shield around his neck, had his loaded firearm and bulletproof vest, and had 10 pounds of the Victim's marijuana in his trunk.  (*Id.*)

II. **The Defendant's Plea and Applicable Guidelines Range**

Indictment 20 Cr. 202 (LAP) charges Latimer and his co-defendants in four-counts: (1) conspiracy to commit robbery, (2) robbery, (3) narcotics conspiracy, and (4) using and carrying a firearm, which was brandished, during a crime of violence and drug trafficking crime, in violation of Title 18, United States Code, Sections 1951, 924(c) and 2, and Title 21, United States Code, Section 846.  (*Id.* at 1-5).  Latimer has been detained since his February 6, 2020 arrest.  Since May 2021, Latimer has been housed at the Windsor Park Rehab and Nursing Center in Queens Village, New York, where he is a patient.  (*Id.* at 49).

On November 25, 2020, the defendant pled guilty, pursuant to a plea agreement, to Count Four of the Indictment, which charged him with possessing, using, and carrying a firearm, which was brandished, during and in relation to, and in furtherance of, a crime of violence, in violation of 18 U.S.C §§ 924(c)(1)(A)(i) & (ii).  (*Id.* at 6).  In the plea agreement, the parties agreed that the Guidelines call for the mandatory minimum sentence of 84 months' imprisonment required by the

statute of conviction. (*Id.*) The Probation Office agrees and recommends a sentence of 84 months' imprisonment.

III. **Discussion**

    A. **Applicable Law**

Although the Guidelines are not mandatory, they provide important guidance to the Court following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). After making the initial Guidelines calculation, a sentencing judge must consider the factors outlined in Title 18, United States Code, Section 3553(a), and "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing outlined in 18 U.S.C. § 3553(a)(2).

    B. **Analysis**

The Government respectfully submits that a sentence of 84 months' imprisonment—the mandatory minimum term required by statute and the sentence contemplated by the Guidelines—should be imposed in this case.

*First*, the nature and circumstances of this offense warrant a Guidelines sentence. The defendant abused his position of authority to commit an armed robbery inside of a residential building in the middle of the day. Latimer committed this robbery while carrying his NYPD service weapon, which was loaded with fifteen rounds of ammunition, and accompanied by co-defendant Jamel Jones, who also had a loaded gun. This was a dangerous crime that could have had disastrous consequences. While there were no other individuals in the lobby at the moment Latimer and Jones confronted the Victim, building residents or visitors were walking through the lobby in the minutes before and after the robbery and could have easily been ensnared in the crime. Indeed, any number of factors could have led to the defendant, his co-defendants, the Victim or a bystander engaging in violence or discharging a weapon.

*Second*, the defendant's history and characteristics weigh in favor of a Guidelines sentence. While Latimer does not have a criminal record, the circumstances of the robbery demonstrate that he was willing to violate his oath to faithfully discharge his duties for his own personal gain. Latimer used his position of power to exploit the Victim. Further, it is these characteristics that made this robbery possible—without Latimer and his NYPD service weapon, bulletproof vest, shield, the robbers would not have been able to trick the Victim into giving up his marijuana and this robbery may very well have never occurred. This is an aggravating factor that demonstrates the appropriateness of a Guidelines sentence in this case. Additionally, as opposed to the many defendants who come before this Court having been drawn to crime in response to a traumatic childhood or limited opportunities, Latimer's personal history and employment record reflect that he had every ability to live a productive and fulfilling law-abiding life. His decision to turn to crime, and use his opportunities to victimize others, is thus even more egregious.

*Third*, a Guidelines sentence is will adequately punish the defendant and adequately deter him and others from engaging in this type of conduct. Latimer's conduct reflects how easy it can be for law enforcement officers to use their positions of power to victimize those they are charged with protecting. The Court's sentence must send a message that individuals who chose to disgrace their profession in this way will face serious consequences.

*Finally*, the Government acknowledges the presence of mitigating factors in this case, particularly the defendant's health conditions, that would be appropriate for the Court to consider.

## IV. Conclusion

Accordingly, the Government respectfully requests that the Court impose a Guidelines sentence of 84 months' imprisonment.

Respectfully submitted,

AUDREY STRAUSS
United States Attorney

by: /s/ Jamie Bagliebter
Jamie Bagliebter
Christopher Brumwell
Assistant United States Attorneys
(212) 637-2236/2477

cc: Counsel of Record (by ECF)