```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
UNITED STATES OF AMERICA      :        20-cr-202 (LAP)
                              :
                              :
             v.               :        ORDER
                              :
MICHAEL LATIMER,              :
                              :
             Defendant.       :
------------------------------x
```

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is Mr. Latimer's motion for a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), (dkt. no. 117), the Government's opposition, (dkt. no. 121), and Defendant's reply, (dkt. no. 126). For the reasons set out below, the motion is granted.

I.  **Background**

   a.  **The Offense Conduct**

The Defendant, Michael Latimer, is a thirty-four-year-old male who, while employed as a police officer with the New York City Police Department ("NYPD"), committed an armed robbery of marijuana dealer. (Revised Final Presentence Report ("PSR"), dated Sept. 20, 2021 [dkt. no. 99] ¶¶ 12-20.)

Defendant and his three co-defendants committed this armed robbery on February 6, 2020 inside of an apartment building (the "Building") in the Bronx, New York. (Id. ¶ 13.) The victim ("Victim"), a marijuana dealer with a prior relationship with

Defendant's co-defendant, Justin Rivers, agreed to sell Rivers 20 pounds of marijuana, and Defendant and his co-defendants decided to rob him. (Id.) The plan for the robbery involved Defendant's exploiting his role as an NYPD officer to trick the Victim into thinking that the Victim was being arrested and having his marijuana confiscated, when in fact he was being robbed at gunpoint by an off-duty police officer and his co-conspirators. (See id. ¶¶ 13-16.)

On the day of the robbery, Defendant and his co-defendants met prior to the robbery and then drove to the Building. (Id. ¶ 14.) Defendant and co-defendant Jamel Jones exited the car and entered the Building while co-defendants Rivers and Lynch waited outside of the Building. (Id.) Defendant was wearing his NYPD uniform pants, a bulletproof vest, and a ski mask, and he had his NYPD shield around his neck. (Id.) Defendant was also carrying his NYPD service weapon, which was loaded with fifteen rounds of ammunition. (Id.) Jones, also armed with a loaded gun, was dressed in dark clothing to give the impression that he was a law enforcement officer. (Id.)

The Victim walked into the lobby of the Building, carrying a duffle bag containing 10 pounds of marijuana to sell to Rivers. (Id. ¶¶ 15, 19.) Defendant shined a flashlight in the Victim's face, showed his NYPD shield, and asked to see the Victim's identification. (Id. ¶ 15.) Defendant also asked about the

contents of the Victim's bag.  (Id.)  The Victim, who believed that Defendant was an NYPD officer, told Defendant that his identification was upstairs and led Defendant and Jones to his apartment.  (Id.)

Once outside of the Victim's apartment, Defendant suggested to the Victim that the Victim would be taken to jail if he did not hand over the bag of marijuana.  (Id. ¶ 16.)  In particular, Defendant said something to the effect of, "[m]y sergeant would be very happy with this," referring to the marijuana, and then continued, "[d]o you want to go to jail for it, or just take a loss and get it confiscated?"  (Id.)  Defendant put his hand on his firearm, which was in a holster on his hip, and lifted his sweater so that the firearm was clearly visible to the Victim.  (Id.)  During this exchange outside of the apartment, Jones also took the Victim's apartment keys from the Victim and used them to enter the Victim's apartment.  (Id.)  Jones took a wallet and a watch from the apartment.  (Id.)  Jones and Defendant ultimately returned the wallet to the Victim, but not before removing the Victim's forms of identification.  (Id.)  Defendant then instructed the Victim to go inside the apartment and lock the door, which the Victim did.  (Id.)  Defendant and Jones left the apartment with the bag of marijuana, the Victim's watch, and the Victim's forms of identification and met co-defendant Keith Lynch outside of the Building in Defendant's Cadillac.  (Id. ¶¶ 16-17.)

Lynch drove Defendant's car to a bodega approximately four blocks from the Building, parked, and went into the bodega. (Id. ¶¶ 17, 19.)  While Defendant and Jones were waiting in the car, they were approached by NYPD officers who had learned of a nearby robbery. (Id. ¶ 19.)  Defendant told the officers that he was "on the job." (Id.)  At this time, Defendant was still wearing his NYPD shield around his neck, had his loaded firearm and bulletproof vest, and had 10 pounds of the Victim's marijuana in his trunk. (Id.)  With Defendant's consent, the officers inspected the trunk of the car, where they uncovered the bag of marijuana and other items. (Id.)

    b.    **Procedural History**

The indictment in case no. 20 Cr. 202 (LAP) charges Defendant and his co-defendants with four-counts:  (1) conspiracy to commit robbery, (2) robbery, (3) narcotics conspiracy, and (4) using and carrying a firearm, which was brandished, during a crime of violence and drug trafficking crime, in violation of Title 18, United States Code, sections 1951, 924(c) and 2, and Title 21, United States Code, section 846. (Indictment, dated Mar. 12, 2020 [dkt. no. 12] at 1-5.)  On November 25, 2020, the Defendant pled guilty, pursuant to a plea agreement, to Count Four of the Indictment, which charged him with possessing, using, and carrying a firearm, which was brandished, during and in relation to, and in furtherance of, a crime of violence, in violation of 18 U.S.C.

4

§§ 924(c)(1)(A)(i) & (ii).  Pursuant to the plea agreement, the parties agreed that the Sentencing Guidelines called for a mandatory minimum sentence of 84 months' imprisonment under the statute of conviction.

On October 4, 2021, the Court sentenced Defendant to the mandatory minimum sentence of 84 months' imprisonment, followed by two years of supervised release.  (Dkt. no. 105.)  At the time of his sentencing, Defendant was housed at the Windsor Park Rehab and Nursing Center located in Queens Village, New York, where he was a patient diagnosed with multiple sclerosis ("MS").  (PSR at 49.) He asked the Court to recommend that he be designated to the Federal Medical Center at Rochester, Minnesota, which is where he is currently housed.

Defendant is scheduled to be released on January 23, 2026.

## II. Defendant's Application for Compassionate Release

### a. Request to Bureau of Prisons

On May 13, 2022, Defendant submitted an administrative request to the Bureau of Prisons ("BOP"), asking the BOP to file a motion for a reduction of sentence on his behalf.  (Dkt. no. 121, Ex. A ("Inmate Request").)  In the Inmate Request, Defendant stated the following regarding his medical condition:

> [M]y extraordinary and compelling reason [I] request to be released from prison is that [I] have a d[e]bilitating disease.  It[']s progressive and also aggressive.  [I] have been diagnosed with multiple sclerosis.  [M]y vision is deteriorating at a very rapid rate.  [I] lost

5

>   my ability to walk.  I have involuntary movements in my
>   body.  [I] suffer spasticity, memory loss, dizzy spells,
>   migraines[,] and [I] have trouble sleeping.  [I] also
>   suffer from back spasms, muscle soreness[,] and
>   weakness[,] and I get fatigued quickly.  [I] have been
>   on medication for over a year[,] and [I] have experienced
>   my condition worsening.

(Id.)  Based on the Inmate Request, it appears that Defendant sought relief under the "Debilitated Medical Condition" criteria established by the BOP.

On July 21, 2022, the Warden at FMC Rochester informed the Acting General Counsel of the BOP that Defendant "meets the debilitated medical criteria for consideration" of a modification of the term of imprisonment under 18 U.S.C. § 3582(c).  (See dkt. no. 121, Ex. B.)

>   Warden Rardin added:
>
>   Should a compassionate release be ordered, Mr. Latimer
>   would reside with his parents, Ivette Bayala and Thomas
>   Latimer, 1006 Gerard Ave., Bronx, NY 10452.  United
>   States Probation has not approved this residence.
>   Mr. Latimer's medical needs could be met at Mt. Sinai
>   Hospital in New York, NY.  He will be eligible for State
>   Medicaid and Social Security.

(Id.)

Ultimately, BOP denied Defendant's request.  (See dkt. no. 121, Ex. C.)  BOP concluded that Defendant did not meet the criteria for being in a "debilitated medical condition."  (Id. at 1.)  BOP's decision, signed by BOP's Acting Assistant Director/General Counsel James C. Wills on August 10, 2022, states as follows:

6

> Mr. Latimer uses a wheelchair which he self-propels on the unit and with which he performs transfers. He requires assistance when traveling long distances.
>
> Mr. Latimer is generally independent with his activities of daily living (ADLs) and instrumental ADLs such as bathing with assistance when entering and exiting the shower, toileting, feeding, dressing, grooming, using the computer, preparing meals/snacks outside of Food Service, laundering small items, and keeping house. Mr. Latimer is alert, fully oriented, and able to make his needs known.
>
> As Mr. Latimer is generally independent with his ADLs and instrumental ADLs and can self-propel on the unit and perform transfers, he does not meet the criteria for a RIS under 3(b). Accordingly, his RIS request is denied.

(Id. at 1-2.)[1]

### b. Instant Motion

On February 3, 2023, Defendant filed the instant motion, seeking to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Dkt. no. 117.) Based on the substance of the motion, the Court construed it as one for compassionate release under 18 U.S.C. § 3582(c)(1)(A). (Dkt. no. 120.)

## III. Applicable Law

Under 18 U.S.C. § 3582(c)(1)(A):

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights

---

[1] Under BOP regulations, a "Debilitated Medical Condition" requires that the defendant be either "[c]ompletely disabled, meaning the inmate cannot carry on any self-care and is totally confined to a bed or chair" or "[c]apable of only limited self care and . . . confined to a bed or chair more than 50% of waking hours." BOP Program Statement No. 5050.50 § 3(b).

7

>to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>(i) extraordinary and compelling reasons warrant such a reduction; or
>
>. . .
>
>and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Because the statute refers to the applicable policy statement in the Sentencing Guidelines, that policy statement furnishes the substantive criteria for relief. See 28 U.S.C. § 994(t).

The policy statement, which appears at section 1B1.13(a) of the Sentencing Guidelines, provides that a reduction of sentence is permissible if: "extraordinary and compelling reasons warrant the reduction," U.S.S.G. § 1B1.13(a)(1)(A); "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," id. § 1B1.13(a)(2); and "the reduction is consistent with this policy statement," id. § 1B1.13(a)(3).  Like the statute, section 1B1.13(a) requires consideration of the 18 U.S.C. § 3553(a) factors to the extent that they are applicable.

8

Section 1B1.13(b) of the Sentencing Guidelines describes the circumstances under which "extraordinary and compelling reasons" exist. As relevant here, an extraordinary and compelling reason might exist under the following circumstances:

(1) <u>Medical Circumstances of the Defendant.</u>—

(A)  The defendant is suffering from a terminal illness (<u>i.e.</u>, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (<u>i.e.</u>, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(B)  The defendant is—

    (i)    suffering from a serious physical or medical condition,

    (ii)   suffering from a serious functional or cognitive impairment, or

    (iii)  experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(2) <u>Age of the Defendant.</u>— The defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

U.S.S.G. § 1B1.13(b).

As the movant, Defendant bears of the burden of proving that he is entitled to relief under 18 U.S.C. § 3582. <u>See</u> <u>United</u>

States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease."); United States v. Clarke, No. 09 Cr. 705 (LAP), 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010) (citing same).

## IV. Discussion

As noted above, at the time of his sentencing, Defendant had already been diagnosed with MS and was residing at Windsor Park Rehab and Nursing Center in Queens, New York.  As set forth in the medical records attached to the Government's opposition brief, Defendant suffers from "central nervous system demyelinating disease," that is, MS.  (Dkt. no. 121, Ex. B.)  Charles B. Slater, M.D., of the Federal Medical Center in Rochester, Minnesota, opined:

> In light of the patient's physical disabilities as described above, he does qualify from a medical perspective for consideration of reduction in sentence. Additionally, because of his need for chronic immunosuppression and his underlying neurologic process, he is at risk for a poor outcome should he become infected with COVID-19 in this high-risk environment. His life-expectancy is greater than 18 months.

(Dkt. no. 117, Ex. A at 9.)  As noted by the Warden, Defendant has an adequate post-release plan:

> Should a compassionate release be ordered, Mr. Latimer would reside with his parents, Ivette Bayala and Thomas Latimer, 1006 Gerard Ave., Bronx, NY 10452.  United States Probation has not approved this residence. Mr. Latimer's medical needs could be met at Mt. Sinai

Hospital in New York, NY. He will be eligible for State Medicaid and Social Security.

(Dkt. no. 121, Ex. B.)

As also noted above, the General Counsel of BOP denied Defendant's request, finding essentially that he is "generally independent with his activities of daily living" and thus does not technically comply with section 3(b) of the BOP Program Statement No. 5050.50, <u>Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)</u>.

As set forth in his motion, Defendant has lost virtually all of his eyesight and is confined to a wheelchair. In the Court's view, based on the proffered medical records, Defendant's physical condition constitutes "extraordinary and compelling circumstances warranting release." As confirmed by his medical records, Defendant has MS and has lost his eyesight and his ability to walk. He has "involuntary movements in [his] body[,] . . . . suffer[s] spasticity, memory loss, dizzy spells, migraines and. . . . [has] trouble sleeping." (Dkt. no. 121, Ex. A.)

Moreover, the section 3553(a) factors do not counsel against release. Certainly the nature and circumstances of the offense are serious. As a police officer, Defendant betrayed the trust placed in him by his community to further the drug trade. Such a betrayal of trust merits a serious sentence. The Court notes, however, that Defendant has served over four years of an 84-month

11

sentence, a sentence that would be approximately 70 months in light of Defendant's good behavior.  Thus he has served 51 months of about a 70-month term.  Certainly that is a serious sentence.

With respect to the history and characteristics of Defendant, he had no prior criminal history, (see PSR ¶¶ 29-33), but astoundingly betrayed the trust placed in him.  The same analysis prevails as that under the nature and circumstances of the offense.

With respect to the paragraph two factors, as the Court has noted, having served 51 months of an approximately 70-month sentence adequately reflects the seriousness of the offense.  It is also sufficient for public deterrence.  Given Defendant's physical condition, there is no need for further incarceration to protect the community from further crimes of this Defendant.  With respect to subparagraph 2(D), Defendant's post-release plan will provide needed medical care.

The paragraphs three, four, and five factors are not implicated here, and with respect to paragraph six, the need to avoid unwarranted sentencing disparities, any perceived disparity is more than warranted by Defendant's physical condition.  Accordingly, the section 3553(a) factors do not counsel against release.

### V. Conclusion

For the reasons set out above, Defendant's motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A), (dkt.

no. 117), is granted, and his sentence is reduced to time served. Release shall be delayed for fourteen days to permit arrangements to be made for Defendant's transfer and medical care.

**SO ORDERED.**
Dated:   New York, New York
         May 15, 2024

_____
LORETTA A. PRESKA
Senior United States District Judge